**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00112-CR**
_____

**ARCHIE LEE HARRIS JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 21-37749**

**MEMORANDUM OPINION**

Appellant Archie Harris was convicted of burglary of a habitation, a second-degree felony, and was sentenced to seven years in the Institutional Division of the Texas Department of Criminal Justice. *See* Tex. Penal Code Ann. § 30.02(a)(1). Appellant contends that he was not guilty of burglarizing a "habitation." *See* Tex. Penal Code Ann. §§ 12.35(a), 30.02(c)(1). We affirm the trial court's judgment.

1

Evidence at Trial

Helen Cormier's[1] Testimony

Helen testified that she and her husband moved into their house in Beaumont, Texas during the summer of 2017, and the home had three bedrooms and a garage and garage apartment. The garage and garage apartment were attached to the house by a covered walkway. According to Helen, they were in the process of remodeling their house.

During the renovations in December 2020, they moved to a temporary residence because the demolition and remodeling process left the house without a bathroom. Although the garage apartment had running water and electricity, and was therefore "habitable," and although the Cormiers could have lived in the garage apartment during the renovations, they chose not to do so. Instead, they used the garage apartment to store some of their property, including dishes, tools, collectibles, and the like. They used the open double carport area to store a riding lawnmower and sports equipment.

Helen testified that on April 27, 2021, she was driving past the property when she noticed that the previously locked door to the garage apartment was open. She then discovered the padlock on the door had been removed and the door

---

[1] We use pseudonyms to refer to the alleged victims. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[]").

had been forced open, "[e]verything from inside the garage apartment that [they] had stored with the exception of a few items that were on the floor[]" was missing, and she called the police. According to Helen, the missing items included items such as an air compressor, tools, and ice chests. The Cormiers immediately installed a motion-activated video camera, and that camera recorded additional thefts on April 29, May 6, and May 7. Helen testified that in June her husband drove by the property and noticed that their lawnmower that had been parked underneath the carport had been stolen. Neither Cormier nor her husband gave the person depicted in the video or any other person permission to remove any of the items from their property, and she had never met or seen Appellant. According to Helen, only a few of the stolen items were recovered, including the lawnmower.

Testimony of Brandy Dyson

Evidence technician Brandy Dyson testified and described her training and her usual day-to-day job duties, which include taking photographs, lifting fingerprints, and collecting evidence. She outlined the procedures for lifting and identifying latent fingerprints, noting that the computer generates a list of possible suspects, but that she personally performs the final identification. Her colleague then verifies Dyson's opinion of the fingerprint match. Dyson and her colleague matched the sole usable fingerprint taken from the crime scene to Appellant's fingerprint.

3

Testimony of John Courts

Courts, an eighteen-year officer with the Beaumont Police Department also testified. Courts summarized his training and experience as a law enforcement professional. At the time of trial, he was assigned to the burglary unit. He confirmed Cormier's testimony about the burglary location, and noted that there were several burglaries at that same property over a short span of time. Courts also confirmed Dyson's testimony about matching a fingerprint found at the crime scene to Appellant. After obtaining the fingerprint evidence and the photographic evidence from the Cormier's security camera which showed a suspect who matched the physical description of Archie Lee Harris, the police arrested Archie Lee Harris for the burglaries. Courts interviewed Harris about the burglaries on the day of the arrest, and during that interview, according to Courts, Harris admitted he is the person on the video taken by the Cormier's camera, and Harris admitted he entered the structure in the garage apartment and that he had taken items from the Cormiers. After the interview, Courts escorted Harris to Harris's home, where some of the stolen goods were found. The Cormier's riding mower was recovered from Harris's house, along with some glassware and a few other items.

Additional Evidence

In addition to Harris's fingerprint, the record contains multiple photographs taken at the crime scene and photographs of items found at Harris's home. There

4

were additional exhibits with still images downloaded from the Cormier's security camera. The security camera still images or photographs show a person taking items from the Cormier property and leaving the premises with the items. A video recording of Appellant's interview by law enforcement was also admitted into evidence.

## Issues

In three appellate issues Appellant challenges his conviction. First, he argues there was insufficient evidence that the structure he burglarized was a habitation. Second, he contends the trial court erred by admitting evidence of Appellant's extraneous offenses. And third he argues the trial court erred by omitting a jury instruction on the lesser included offense of burglary of a building.

## Standard of Review

When reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury as the factfinder is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Jackson*, 443 U.S. at 319. We give deference to the factfinder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw

5

reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the jury resolved such facts in favor of the verdict and defer to that resolution. *Brooks v. State*, 323 S.W.3d 893, 899 n.13 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We review the trial court's admission of evidence for an abuse of discretion. *See Martinez v. State,* 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *See Martinez,* 327 S.W.3d at 736; *Layton*, 280 S.W.3d at 240. In addition, we uphold a ruling on the admission of evidence if it was correct on any theory of law supported by the record and applicable to the case, in light of what was before the trial court at the time the ruling was made. *See State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We review a trial court's refusal to submit a lesser-included instruction for an abuse of discretion. *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023).

Analysis

Under Texas law, a person commits burglary of a habitation if he enters a "habitation" without the effective consent of the owner with the intent to commit a felony, a theft, or an assault, or if he attempts to commit these offenses. *See* Tex. Penal Code Ann. § 30.02(a)(1), (3). Harris admits he entered the Cormier's property without consent with the intent to commit a theft, but he disputes the "habitation" element of his offense.

For purposes of a burglary, the term "habitation" is defined by the Penal Code as follows:

> (1) "Habitation" means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes:
> (A) each separately secured or occupied portion of the structure or vehicle; and
> (B) each structure appurtenant to or connected with the structure or vehicle.

Tex. Penal Code Ann. § 30.01(1).

In determining whether a structure is a habitation, "[t]he jury may look to a host of considerations such as the contents of the structure, including bedding, electricity, plumbing, or furniture; the jury may also look to and consider the type of structure and its typical use as a means for overnight accommodation." *Salazar v. State*, 284 S.W.3d 874, 877 (Tex. Crim. App. 2009) (*citing Blankenship v. State*, 780 S.W.2d 198, 209-10 (Tex. Crim. App. 1989). The jury's determination that a structure is a habitation will be overturned on appeal only if the appellant can show

7

that no reasonable trier of fact could have found the place to have been a habitation considering the criteria provided. *Blankenship*, 780 S.W.2d at 209-10.

We reject Appellant's argument that the garage apartment was a building, rather than a "habitation." Helen Cormier testified that the garage apartment had electricity and running water; she indicated that it was "habitable," and that the family could have lived in the apartment while they were remodeling their house. This evidence established it was an apartment and could be used for "overnight accommodation." *See Salazar*, 284 S.W.3d at 877.

We are not persuaded by Appellant's argument that the apartment was not a habitation because it "was in the process of a complete demolition and remodel." First, Appellant's argument misstates the evidence before the jury. According to the evidence in the record, it was the house, not the apartment, that was being remodeled. The apartment was capable of overnight accommodation. That said, even if the apartment were undergoing renovation, the mere fact of renovations being made would not preclude a house from being considered a habitation. *See Jones*, 2010 Tex. App. LEXIS 10279, at **14-16. Second, the garage apartment and area within the garage was "appurtenant to or connected with" the house. *See Andrus*, 495 S.W.3d at 305. A structure connected to the house like this garage apartment is considered part of the house. *See Salas v. State*, 548 S.W.2d 52, 53 (Tex. Crim. App. 1977) (observing that "habitation" includes garages). The

8

evidence showed that the garage apartment and structure in question was physically connected to the main house at the roof line and by a covered walkway.

When viewed in a light most favorable to the verdict, the jury could have concluded beyond a reasonable doubt that the structure and garage apartment Harris unlawfully entered and from which he stole the Cormier's property was a "habitation" as defined by statute. *See* Tex. Penal Code Ann. § 30.01(1)(B). We conclude based on the record that there was legally sufficient evidence presented to the jury that established the garage apartment Appellant burglarized was a "habitation" as defined in the applicable penal code because it was both "adapted for the overnight accommodation of persons," and "appurtenant to or connected with" the Cormier's house, which was also a "habitation" despite the renovations that were ongoing. *See Jones v. State*, No. 01-09-00267-CR, 2010 Tex. App. LEXIS 10279, at **14-16 (Tex. App.—Houston [1st Dist.] Dec. 30, 2010, no pet.) (mem. op., not designated for publication) (rejecting the argument that an unoccupied house undergoing renovations was not a habitation); *Andrus v. State*, 495 S.W.3d 300, 305 (Tex. App.—Beaumont 2016, no pet.) (concluding that the Legislature's definition of "habitation" includes a garage and breezeway that are "appurtenant" to a house even if the garage is detached and explaining that the definition of "appurtenant" is "'[a]nnexed to a more important thing.'") (citation omitted).

9

We overrule Appellant's first issue.

In his second issue, Appellant argues that the trial court erred by allowing the State to introduce evidence of the multiple burglaries he committed at the Cormier's residence over the course of a few weeks. Appellant contends that evidence of these other serial burglaries was "inadmissible propensity evidence" and its risk of unfair prejudice outweighed its probative value. *See* Tex. R. Evid. 403, 404(b). Appellant's brief includes only recitations of general legal principles. It does not explain how those principles apply to the instant case to support his position on appeal. Appellant therefore has failed to comply with Rule 38.1(i). *See* Tex. R. App. P. 38.1(i); *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020) (negating the need to consider matters that have not been adequately briefed). That said, we disagree with the merits of the generic argument Appellant makes in his brief.

Appellant was indicted in this case for the April 27, 2021 burglary of the Cormier's property. Evidence of the "extraneous offenses" which Appellant claims should not have been admitted includes evidence that Appellant went back to the Cormier's property and burglarized the same property over the course of multiple weeks.

"Extraneous-acts evidence is admissible if it is relevant to a fact of consequence in the case, and the probative value of the evidence is not

substantially outweighed by unfair prejudice." *Fox v. State*, 283 S.W.3d 85, 91 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd); *see also* Tex. R. Evid. 401, 403, 404(b). "[A] trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Under this standard, we do not reverse a trial court's decision unless it lies outside the zone of reasonable disagreement. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016). "Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *De La Paz*, 279 S.W.3d at 344. "'If the trial court's decision on the admission of evidence is supported by the record, there is no abuse of discretion, and the trial court will not be reversed.'" *Bradshaw v. State*, 466 S.W.3d 875, 878 (Tex. App.—Texarkana 2015, pet. ref'd). "In determining whether the trial court abused its discretion, '[w]e may not substitute our own decision for that of the trial court.'" *Id.*

In a pretrial motion, defense counsel objected to the admission of evidence concerning what he described as "extraneous offenses," but the trial court overruled his objection and found the evidence was admissible under the permitted uses outlined in Rule 404(b). During trial, defense counsel again objected under 404(b), and he also argued the evidence was inadmissible under Rule 403. The trial

11

court overruled the objections but granted the defense attorney's request for a limiting instruction. The Court gave the following limiting instruction to the jury:

> Ladies and gentlemen, what you're going to hear is evidence regarding other possible crimes that the defendant may have committed. Those, if you are to use them in your deliberations, have to also be proven to you beyond a reasonable doubt. If they are not, then you are not to use them. There will be a more formal instruction, also, in the Court's charge that explains that to you, as well.

In the jury charge, the judge also instructed the jury:

**Evidence of Wrongful Acts Possibly Committed by Defendant**

> During the trial, you heard evidence that the defendant may have committed wrongful acts not charged in the indictment. The state offered the evidence to show the identity, plan, intent and absence of mistake of the defendant. You are not to consider that evidence at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful act(s). Those of you who believe the defendant did the wrongful act may consider it.
> Even if you do find that the defendant committed a wrongful act, you may consider this evidence only for the limited purpose I have described. You may not consider this evidence to prove that the defendant is a bad person and for this reason was likely to commit the charged offense. In other words, you should consider this evidence only for the specific, limited purpose I have described. To consider this evidence for any other purpose would be improper.

Harris does not complain on appeal about the limiting instructions that were given to the jury. We presume the jury followed the limiting instructions of the trial court. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

12

Rule 404(b) of the Texas Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b)(1). Rule 404(b)(2), however, provides for certain permitted uses of extraneous-offense evidence. *See* Tex. R. Evid. 404(b)(2). Specifically, the rule provides that the evidence is admissible for such matters as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. This list is not exclusive but is illustrative. *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). "[E]xtraneous-offense evidence may be admissible when a defendant raises a defensive issue that negates one of the elements of the offense." *Id.* "Thus, a party may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *Id*. The prosecutor argued that the extraneous-offense evidence was admissible because it established Appellant "had opportunity, intent, preparation, plan, shows his identity and it shows . . . it is not an accident [or] a mistake that he went to this property." Appellant's defense at trial was twofold: (1) the structure was not a habitation, and (2) he thought the property had been abandoned and he had mistakenly taken the Cormier's belongings. The extraneous

13

offenses were nearly identical to the offense at issue in this case. Essentially, Appellant stole various items from the same property on different days over several weeks.

The trial court reasonably could have concluded that the extraneous offenses and the instant offense were sufficiently alike to render the extraneous-offense evidence admissible under Rule 404(b)(2). The extraneous offenses served to negate Appellant's defense that it was merely an accident or misunderstanding and the offenses help establish elements of the charged offense. The trial court also could have reasonably concluded that the extraneous-offense evidence was admissible because it provided context to the charged offense to explain the circumstances surrounding the offense and why the homeowners put up a camera and then why investigators focused on Appellant as a suspect. We conclude the trial court's decision to admit the extraneous-offense evidence over Appellant's Rule 404(b) objection was within the zone of reasonable disagreement and not an abuse of discretion. *See De La Paz*, 279 S.W.3d at 343 ("'Rule 404(b) is a rule of inclusion rather than exclusion'").

As for the Rule 403 objection that Harris made at trial, we also conclude the trial court did not err in overruling this objection. When conducting a Rule 403 balancing test, a trial court

> [M]ust balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence

14

against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). In any given case, "these factors may well blend together in practice." *Id*. at 642. The trial court is presumed to have engaged in the required balancing test under Rule 403 once a party objects on the ground of Rule 403 and the trial court rules on the objection unless the record indicates otherwise. *See Williams v. State*, 958 S.W.2d 186, 195-96 (Tex. Crim. App. 1997). The party opposing admission of the evidence bears the burden to demonstrate that the danger of unfair prejudice substantially outweighs the probative value. *See Kappel v. State*, 402 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Appellant fails to analyze any of the Rule 403 factors in his brief, but he summarily alleges the trial court erred. *See* Tex. R. App. P. 38.1(i).

Even assuming Harris preserved this argument on appeal, we conclude based on the record before us that the trial court, after balancing the Rule 403 factors, could have reasonably concluded that the probative value of the extraneous-offense evidence was not substantially outweighed by the danger of unfair prejudice and the other factors in the rule. Applying the first balancing factor, the trial court

15

could have concluded the evidence held probative value and relevance because the evidence demonstrated Appellant's intent to commit burglary of a habitation, and it showed his identity and plan to commit the offense. The evidence was also consistent with other evidence. The State also introduced evidence of Appellant's admission that he entered the Cormier's property and took items that did not belong to him, that Appellant brought law enforcement back to his home where he led them to items taken from the Cormier's property, and there was photographic evidence that Appellant returned to the Cormier's property after the initial burglary.

With respect to the remaining factors, the evidence would not have unduly prejudiced or irrationally affected the jury nor did it tend to suggest decision on an improper basis. The extraneous-offense evidence would not affect the jury any differently than the evidence of the charged offense because the offenses were so similar. And the time at trial regarding the challenged evidence was small in relation to the entire trial, and the same witnesses that testified to the extraneous offenses testified to establish the elements of the charged offense. The subsequent extraneous offense evidence helped establish Appellant's identity in the underlying case. As we noted above, the trial court gave a limiting instruction, and we presume the jury followed the trial court's instruction. *See Renteria v. State*, 206 S.W.3d 689, 707 (Tex. Crim. App. 2006). After balancing the Rule 403 factors, the

16

trial court could have reasonably concluded that the probative value of the extraneous-offense evidence was not substantially outweighed by the danger of unfair prejudice. *See id.* We conclude that the trial court did not abuse its discretion in admitting the challenged evidence. We overrule Appellant's second issue.

In his final appellate issue, Appellant contends that the trial court erred in refusing to include an instruction on the lesser-included offense of burglary of a building in the jury charge. We employ a two-part analysis to determine whether a trial court abused its discretion in denying a requested charge on a lesser-included offense. *Chavez*, 666 S.W.3d at 776; *Ritcherson v. State*, 568 S.W.3d 667, 670 (Tex. Crim. App. 2018); *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. Ann. art. 37.09 (defining the requirements for a lesser-included offense).

First, we compare the statutory elements as alleged in the indictment with the statutory elements of the requested lesser-included offense to determine whether the lesser-included offense is included within the proof necessary to establish the charged offense. *Ritcherson*, 568 S.W.3d at 670-71; *Bullock*, 509 S.W.3d at 924-25. This is a question of law and does not depend on the evidence to be produced at trial. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). An offense is a lesser-included offense (sometimes referred to as an LIO) if the greater-inclusive offense either alleged all the elements of the LIO or alleged

17

elements plus facts (including descriptive averments) from which all the elements of the LIO may be deduced. *Id.* (citing *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009); *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007)). "If proof of the lesser offense is included within the proof of the greater offense, the first step has been satisfied." *Chavez*, 666 S.W.3d at 776.

Second, we review the entire record to determine if there exists "more than a scintilla" of affirmative evidence, regardless of whether controverted or credible, from which a rational jury could find the defendant guilty of only the lesser offense. *Roy v. State*, 509 S.W.3d 315, 317 (Tex. Crim. App. 2017); *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) ("While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if Appellant is guilty, he is guilty only of the lesser-included offense."). This requirement is met if there is affirmative evidence of a factual dispute that raises the lesser offense and rebuts or negates other evidence establishing the greater offense. *Chavez*, 666 S.W.3d at 776 (citing *Roy*, 509 S.W.3d at 319).

In this case, the indictment charged that Appellant "did then and there with intent to commit theft, enter a habitation . . . without the effective consent of [the owner.]" The same predicate offense of burglary underlies both burglary of a building and burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02(a).

18

Accordingly, burglary of a building can be a lesser-included offense of burglary of a habitation. *See Andrus*, 495 S.W.3d at 308 (noting that "the Court of Criminal Appeals has recognized that burglary of a building on proper evidence may sometimes constitute a lesser-included offense of burglarizing a habitation").

Appellant has not directed this Court to evidence in the record from which the jury could have concluded that if Appellant were guilty, he was guilty only of burglary of a building and not burglary of a habitation. While he argues that the evidence at trial demonstrated that the structure was vacant and unlivable, as discussed above, according to Helen Cormier, the garage apartment was habitable. The mere fact that the garage apartment or the house may have been unoccupied does not constitute more than a scintilla of evidence to show that the apartment was not suitable for overnight accommodation. *See Jones*, 2010 Tex. App. LEXIS 10279, at **14-16; *see also Roy*, 509 S.W.3d at 317; *Cavazos*, 382 S.W.3d at 385. The evidence at trial sufficiently established that the garage apartment fell within the statutory definition of a "habitation," and it was not simply a "building."

Accordingly, we conclude that Appellant has not shown he was entitled to the lesser-included instruction. The trial court did not abuse its discretion in refusing Appellant's request for a jury instruction on burglary of a building. *See Chavez*, 666 S.W.3d at 776; *Andrus*, 495 S.W.3d at 308; *Crutchfield v. State*, No. 12-09-00440-CR, 2011 Tex. App. LEXIS 5883, at **13-14 (Tex. App.—Tyler

19

July 29, 2011, no pet.) (mem. op., not designated for publication). We overrule Appellant's third issue.

Having overruled all issues on appeal, the trial court's judgment is affirmed.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on June 2, 2023
Opinion Delivered December 6, 2023
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.