**Starsky James ANDRUS, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 09–14–00355–CR**

Court of Appeals of Texas, Beaumont.

Submitted on May 19, 2015

Opinion Delivered May 18, 2016

proceeding with the condemnation hearing

are void. *See Garcia*, 884 S.W.2d at 823.

David Barlow, Beaumont, TX, for Appellant.

Bob Wortham, Criminal District Attorney, Ann Manes, Assistant Criminal District Attorney, Beaumont, TX, for Appellee.

Before McKeithen, C.J., Horton and Johnson, JJ.

## OPINION

HOLLIS HORTON, Justice

In five issues, Starsky James Andrus appeals a jury's verdict in which the jury found him guilty of burglarizing a habitation. *See* Tex. Penal Code Ann. § 30.02(a)(1), (c)(2) (West 2011). On appeal, Andrus argues that (1) the evidence is insufficient to support his conviction; (2) the trial court erred in failing to grant his motion seeking a directed verdict of acquittal; (3) the trial court erred by refusing the challenge for cause that he made against one of the potential jurors, potential juror 7 (PJ 7); (4) the trial court erred in failing to submit his requested charge

on the offense of burglary of a building, a crime that Andrus contends constituted a lesser-included offense under the facts of the burglary that were before the jury in his trial; and (5) the trial court erred in failing to submit his requested charge on criminal trespass, another crime he contends constituted a lesser-included offense under the facts before the jury at his trial. We conclude that Andrus's complaints in issues one, two, four and five are without merit, and that Andrus's complaint in issue three, which concerns his complaints about the trial court's refusal to strike PJ 7 for cause, was not properly preserved for our review.

## Background

In 2013, Andrus was indicted for "intentionally" entering a habitation owned by S.L.[1] with the intent to commit theft. The indictment includes an enhancement count, which states that Andrus had a previous conviction for burglarizing a habitation.

Briefly, the facts proven during trial regarding the circumstances of the offense show that on the morning of November 25, 2013, S.L., the individual who owned the home where the offense allegedly occurred, discovered that surveillance videos from her home had captured images of a man come onto her property, after which he entered her garage. The surveillance footage showing the man on her property was admitted into the evidence that was before the jury during the trial. A portion of the footage is in color, and in that portion, the face of the man can be seen as he stands at a door leading from S.L.'s garage into a covered breezeway that separates the garage from the rest of S.L.'s home. The garage, the breezeway, and the rest of S.L.'s house all share the same roof.

On the day the incident occurred, S.L. reported the incident to the police; two days later, S.L. showed an acquaintance, F.C., a picture of the man in the garage from the night of the burglary that S.L. captured by taking a picture of the video on her phone. Approximately one block from S.L.'s residence, F.C. noticed a man that he thought looked like the man in the picture S.L. had shown to him on her phone. F.C. called the police to report that he had seen the man who entered S.L.'s property near her home. A police officer responded to the call and the officer saw a man fitting the description given to police by F.C. and detained him. Shortly thereafter, S.L. identified the man that the officer had detained as the man in the footage taken of the man in her garage.

After he was detained, Andrus agreed to a request by the officer that Andrus accompany her to the police station. After Andrus arrived at the station, he spoke to Detective Tina Lewallen regarding his activities on the night of the burglary. Andrus's interview with Detective Lewallen was recorded, and the recording was admitted during the trial. In the interview, Detective Lewallen showed Andrus footage from the surveillance video. After viewing the footage, Andrus told Detective Lewallen that he was the person who entered the garage, but he denied that he had done anything while in the garage or that he had taken anything while there.

Andrus did not testify during the trial. When S.L. testified, she indicated that she was uncertain whether Andrus had taken any items from her garage. Additionally, the footage from the surveillance cameras

---

1. To protect the privacy of the complaining witness, we identify her by using the initials "S.L." to conceal her actual name. *See* Tex. Const. art. 1, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

reflects that Andrus was inside S.L.'s garage for less than four minutes.

At the conclusion of the State's case, Andrus moved for an instructed verdict, asking for a judgment of acquittal. He argued that the prosecution had not proven beyond a reasonable doubt all of the necessary elements of the offense of burglary of a habitation. The trial court denied his request for a directed verdict. Subsequently, without calling any witnesses, Andrus rested. After the jury deliberated, the jury found that Andrus had entered S.L.'s habitation without her permission, and it inferred from the evidence that he had entered the habitation with the intent to commit a theft.

### Standard of Review

In issue one, Andrus argues the evidence is insufficient to support his conviction for burglarizing S.L.'s home. In issue two, Andrus complains the trial court should have granted his motion for instructed verdict. When the defendant challenges the sufficiency of the evidence supporting his conviction, the evidence from the trial, when evaluated in the appeal, is reviewed in the light most favorable to the jury's verdict to determine whether the jury could have found that the defendant committed the essential elements of the offense based on a standard of beyond reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex.Crim. App.2010). In our review, we are not to substitute our judgment for that of the jury; instead, the standard of review requires that the jury be allowed to fully exercise its responsibility to fairly resolve any conflicts that may exist in the testimony, to weigh the evidence for and against the accused, and to draw reasonable inferences from the basic facts to reach its

ultimate conclusion about the defendant's guilt. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007). When a defendant complains about a trial court's failure to grant a motion for directed verdict, we treat that issue "as a challenge to the legal sufficiency of the evidence." *Williams v. State*, 937 S.W.2d 479, 482 (Tex.Crim.App.1996). With respect to Andrus's first two issues, we review the evidence admitted at trial to determine whether the evidence allowed the jury to conclude that Andrus was guilty under the standards identified by the United States Supreme Court in *Jackson*. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

### Sufficiency Challenges

In issues one and two, Andrus argues the evidence is insufficient to show that he intentionally entered a habitation. Also, Andrus argues the evidence is insufficient to show that while in the garage, he intended to commit theft.

Under Texas law, a person can be found guilty of burglarizing a habitation if it is proven that he entered a habitation without the effective consent of the owner with the intent to commit a felony, a theft, or an assault, or if he attempts to commit these offenses. *See* Tex. Penal Code Ann. § 30.02(a)(1), (3) (West 2011). For purposes of burglary, the term "habitation" is defined by the Penal Code as follows:

(1) "Habitation" means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes:

(A) each separately secured or occupied portion of the structure or vehicle; and

(B) each structure appurtenant to or connected with the structure or vehicle.

*Id.* § 30.01(1) (West 2011).

In his appeal, Andrus does not argue that he is not the person who entered

S.L.'s garage. Instead, Andrus argues that the evidence shows the items that he took while he was on S.L.'s property were on a table located outside S.L.'s house; he also suggests that the evidence before the jury did not show that he took anything while inside S.L.'s garage. Additionally, Andrus contends the evidence fails to show that he intentionally entered S.L.'s garage.

In Andrus's case, the jury determined that Andrus intended to commit a theft when entering S.L.'s garage or her breezeway. Under the definition the Legislature provided for "habitation," the garage and breezeway are part of S.L.'s habitation because they are appurtenant structures to her home. *See id.* § 30.01(1). " '[A]ppurtenant' " is defined as "[a]nnexed to a more important thing." Black's Law Dictionary 118 (9th ed.2009). Under Texas law, even a detached garage, on proper evidence, may be found to be appurtenant to a house for the purpose of proving that a burglary in the garage constituted the burglary of a habitation. *See Shakesnider v. State,* 477 S.W.3d 920, 922–23 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (rejecting defendant's sufficiency challenge to burglary of habitation conviction where a detached garage was nine to ten steps from the house it served); *Darby v. State,* 960 S.W.2d 370, 372 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd) (rejecting defendant's sufficiency challenge to his conviction for burglarizing a habitation where the evidence showed the unattached garage was approximately nine feet from the home); *Jones v. State,* 690 S.W.2d 318, 319 (Tex.App.—Dallas 1985, pet. ref'd) (rejecting defendant's sufficiency challenge where the burglary of the habitation occurred in an unattached garage); *White v. State,* 630 S.W.2d 340, 341–42 (Tex.App.—Houston [1st Dist.] 1982, no pet.) (rejecting defendant's sufficiency challenge where the evidence showed the burglary of the habi-

tation occurred in a garage that shared the home's roof). In this case, the jury heard S.L. explain that her garage, breezeway, and house were all under one roof; S.L. also testified that she considered the garage and breezeway to be part of her home. Thus, based on the evidence before it in Andrus's case, the jury could rationally find that Andrus intentionally entered S.L.'s habitation by entering her garage or her breezeway, as both structures were either appurtenant to or connected to the rest of S.L.'s home. *See* Tex. Penal Code Ann. § 30.01(1)(A), (B).

Andrus also argues that the evidence fails to show that he committed or intended to commit a theft while within S.L.'s habitation. In his argument, Andrus focuses on the evidence showing that he took some cigarettes and a lighter from a table on a patio, items that were outside S.L.'s home. However, the State was not required to prove that Andrus actually committed a theft inside S.L.'s garage or her breezeway, as the law requires only that the State prove the individual who entered the habitation without the owner's consent intended to commit a theft when entering the habitation. *See Langs v. State,* 183 S.W.3d 680, 686 (Tex.Crim.App. 2006) ("A person charged with burglary under Section 30.02(a)(1) is guilty of that offense the moment that he crosses the threshold of a habitation without consent and with the intent to commit the underlying felony."); *Garcia v. State,* 571 S.W.2d 896, 899 (Tex.Crim.App.1978) (noting that the offense of burglary may be complete regardless of whether any theft occurs).

While Andrus indicated in the statement that he gave to Detective Lewallen that he did not steal anything in S.L.'s garage, and stated that he changed his mind after entering the garage, each of the facts that a jury considers about a case in the course of a trial "need not point directly and

independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App.2007). On appeal, whether the inferences a jury made were reasonable in deciding that a defendant was guilty is determined based on " 'the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.' " *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim. App.2007) (quoting *Hooper*, 214 S.W.3d at 16–17).

In Andrus's case, the evidence shows that Andrus entered S.L.'s garage at night, went from the garage into a breezeway, opened a closet in the breezeway, looked into the home from the breezeway through a window to the laundry room, and then went outside onto S.L.'s backyard patio. While standing near a table on the patio, Andrus can be seen in the surveillance footage taking items off the patio table and looking into the backyard windows into S.L.'s house. When interviewed after the burglary by Detective Lewallen, Andrus admitted that he was on S.L.'s property, and he admitted that he took cigarettes and a lighter from the patio table. According to the recorded statement that Andrus gave to Detective Lewallen, after entering S.L.'s garage, Andrus changed his mind about being on S.L.'s property and decided to leave. The evidence at trial shows that Andrus did not have permission to be on the property or in S.L.'s garage or breezeway. Given the circumstances proven by the evidence admitted during Andrus's trial, the jury could have reasonably inferred from the evidence that Andrus, when entering the garage or breezeway, intended to commit theft under a standard of beyond reasonable doubt even if he later changed his mind about committing a crime. *See Mauldin v. State*, 628 S.W.2d 793, 795

(Tex.Crim.App.1982) (holding that the defendant's "entry into the building having been made in the nighttime without the consent of the owner is sufficient to show an intent to commit theft"); *Solis v. State*, 589 S.W.2d 444, 446 (Tex.Crim.App.1979) (noting that "an intent to commit theft will be presumed if the attempted entry occurred at night" in a case involving a burglary of a habitation).

We overrule Andrus's first two issues.

### Jury Selection

■ In issue three, Andrus contends the trial court abused its discretion by denying the challenge for cause that he lodged against PJ 7. The record indicates that during jury selection, the prosecutor asked the venire whether anyone had ever been burglarized. PJ 7 responded to the question, stating that fishing equipment and battery chargers had been stolen from his garage. PJ 7 expressed frustration about the burglaries, and indicated that he also dealt with burglaries and thefts at the company where he worked. When the prosecutor asked PJ 7 about whether or not he could be fair and impartial, PJ 7 responded by stating: "I really don't know."

When voir dire concluded, the trial court allowed the attorneys for the parties to ask PJ 7 additional questions at the bench, outside the presence of the other members of the venire. At the bench, PJ 7 gave a number of equivocal responses to questions about whether he could be a fair juror in a case involving an alleged burglary. However, when the trial court asked PJ 7 if he could be fair, impartial, follow the law, and make his decision based on the evidence at trial and not on his personal experiences at work or home, PJ 7 indicated that he "would like to think I could but I really don't know because in

two different homes, I've had stuff stolen." Based on this response and the trial court's apparent perception that PJ 7 would follow the trial court's instructions, the trial court denied Andrus's request asking that the court strike PJ 7 for cause.

■ Subsequently, Andrus's attorney exercised all ten of his peremptory strikes on various prospective jurors, including PJ 7. However, Andrus's attorney did not ask that the trial court grant him additional strikes. Tex.Code Crim. Proc. Ann. art. 35.15(b) (West 2006). Thus, although Andrus exhausted all of his statutory strikes, by failing to request additional peremptory strikes, Andrus failed to preserve his complaint about the trial court's refusal to grant his request to strike PJ 7 for cause. *Allen v. State*, 108 S.W.3d 281, 282 (Tex. Crim.App.2003). To properly preserve error regarding a complaint that a trial court has improperly denied a request to strike a prospective juror for cause, the defendant must (1) assert a clear and specific challenge for cause; (2) use a peremptory challenge on the complained-of prospective juror; (3) exhaust his peremptory challenges; (4) request additional peremptory challenges; (5) identify another objectionable juror; and (6) assert that he would have exercised a peremptory challenge against the other objectionable juror, had an additional peremptory strike been made available. *Id.* Because Andrus did not follow each element of this procedure, he failed to preserve his issue three complaint for our review. Issue three is overruled.

### Charge Error

In issues four and five, Andrus complains the trial court erred in denying his requests to instruct the jury on the offenses of burglary of a building and criminal trespass. Andrus contends that these two offenses were lesser-included offenses of the crime of burglarizing a habitation

under the evidence before the jury at his trial.

■ The record shows that during the charge conference, Andrus asked the trial court to submit instructions to allow the jury to decide whether Andrus had burglarized a building or had committed a criminal trespass in lieu of finding him guilty of having burglarized a habitation. The trial court denied Andrus's requests. To determine if a defendant is entitled to have the jury charged on alleged lesser-included offenses, courts consider the challenge by applying a two-step process: (1) "the lesser included offense must be included within the proof necessary to establish the offense charged" and (2) "some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense." *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App. 1993) (citation and emphasis omitted); *see also* Tex.Code Crim. Proc. Ann. art. 37.08 (West 2006). In the first step, the elements of the offense, as charged in the indictment or information, are compared with the elements of the asserted lesser-included offense. *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex.Crim.App.2007). The determinations regarding whether the other offenses that Andrus suggest qualify as lesser-included offenses are matters that are resolved as questions of law. *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim.App.2013). The first step of the process, as described by the Court of Criminal Appeals, does not require a court to examine the evidence that the jury considered during the defendant's trial. *Id.*

■ If the first step of the process is satisfied, then a court must determine whether the evidence admitted during a defendant's trial made convicting the defendant of the lesser-included offense a rational alternative to the jury's decision to

convict the defendant of the charged offense. *Hall,* 225 S.W.3d at 536. However, unless the cognate pleadings approach that is used in the first step of the process is satisfied, the court considering the appeal need not reach the second step of the analysis. *Meru,* 414 S.W.3d at 164.

▇ Turning to the first step of the two-step process as it applies to Andrus's case, we compare the elements of the alleged lesser-included offenses to the offense the jury found Andrus committed. With respect to burglary of a building, the offense on which the judgment in Andrus's case is based, we note that the Court of Criminal Appeals has recognized that burglary of a building on proper evidence may sometimes constitute a lesser-included offense of burglarizing a habitation. *See Jones v. State,* 532 S.W.2d 596, 601 (Tex. Crim.App.1976), *overruled on other grounds by Moss v. State,* 574 S.W.2d 542 (Tex.Crim.App.1978); *Shakesnider,* 477 S.W.3d at 925. Therefore, since the pleadings step of the process is satisfied with respect to the offenses of burglary of a habitation and burglary of a building, we turn to the question of whether the evidence at Andrus's trial would have allowed the jury to rationally find that he burglarized a building.

Here, the evidence showed that the structures that were burglarized, the garage and breezeway, were part of a habitation, S.L.'s home, in which she was sleeping when the burglary occurred. On the evidence before the jury, no reasonable juror could have concluded that Andrus burglarized an enclosed structure that was to be used on a future date as a habitation, or that the garage or the breezeway were intended for use in a trade, a manufacturing business, as an ornament, or used in some way other than as a habitation. *Compare* Tex. Penal Code Ann. § 30.01(1) (defining "habitation"), *with* Tex. Penal

Code Ann. § 30.01(2) (West 2011) (defining "building"); *see also* Tex. Penal Code Ann. § 30.02(c)(1) (West 2011) (providing that burglary of a building is a state jail felony when the offense occurs in "a building other than a habitation"). In this case, the evidence showed that the structure that Andrus burglarized fell within the definition of the term "habitation," and not within the definition provided for the term "building" as defined by the Legislature. *See id.* § 30.01(1), (2). Based on the evidence before the jury, we conclude that the jury could not have rationally convicted Andrus of only the alleged lesser-included offense of burglary of a building. *See Hayward v. State,* 158 S.W.3d 476, 478 (Tex.Crim.App.2005). We overrule issue four.

▇ In issue five, Andrus complains about the trial court's refusal to instruct the jury on the alleged lesser-included offense of criminal trespass. However, the first step of the two-step analysis articulated in *Rousseau* is not satisfied based on the language that is contained in Andrus's indictment. *See Meru,* 414 S.W.3d at 164 n. 3. In *Meru,* the Court noted:

> In a burglary indictment in which the State does not allege whether the defendant's entry was full or partial, an instruction on criminal trespass as a lesser-included offense would be prohibited. However, a defendant who committed a full-body entry and wants the opportunity for an instruction on criminal trespass can file a motion to quash the indictment for lack of particularity. This would force the State to re-file the indictment, specifying the type of entry it alleges the defendant committed and allow either party to later request an instruction on criminal trespass.

*Id.; compare* Tex. Penal Code Ann.

§ 30.05(a), (b)(1) (West Supp.2015),[2] *with* Tex. Penal Code Ann. § 30.02(a), (b).

Like the indictment in *Meru,* Andrus's indictment simply alleges that Andrus entered a habitation owned by S.L. and it does not allege any specifics regarding the manner in which he entered the garage or the breezeway; i.e., whether the entry was full or only partial. Given the indictment's generality regarding Andrus's method of entry, and in light of the cognate pleadings approach that Court of Criminal Appeals articulated in *Meru* as applied to criminal trespass, we conclude that the pleadings before us in Andrus's case do not satisfy the first step of the lesser-included-offense analysis required in *Rousseau.* *Rousseau,* 855 S.W.2d at 672–73. We hold the trial court properly refused Andrus's request asking that the jury be allowed to consider whether he had committed the offense of criminal trespass. *See Meru,* 414 S.W.3d at 164 n. 3; *Rousseau,* 855 S.W.2d at 672–73. We overrule Andrus's fifth issue.

Having overruled all of Andrus's issues, we affirm the trial court's judgment.

AFFIRMED.

---

**2.** Because the amendments to section 30.05 of the Penal Code do not affect the results of the appeal, we cite the current version of that statute.