**AFFIRMED AS MODIFIED and Opinion Filed April 26, 2021**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01549-CR**

**MICHAEL MAURICIO MARTINEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F19-75117-N**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Carlyle
Opinion by Justice Carlyle

Michael Mauricio Martinez appeals his conviction for burglary of a habitation. We affirm as modified in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

Michael Foster and James Jernigan live in a zero-lot-line house with a small fenced-in back yard. The yard has a stone path leading approximately twenty feet from the back door of the house to a detached private garage. The garage, though detached, is the primary entry point to the house because it is the only way to access the house from the driveway without having to walk completely around the block.

On the morning of January 4, 2019, Jernigan walked out the back door and noticed he could not open the pass-through door to the garage. He and Foster walked around the block and discovered someone had broken into the garage, barricaded the pass-through door, ransacked Foster's car, and taken their property.

Foster and Jernigan called police and reviewed footage from their security cameras from around 4:17 a.m. The footage showed a man later identified as Martinez cautiously creep into the garage with a cigarette dangling out of the right side of his mouth, holding a pistol in a lazy form of what police would call a "low ready" position, in both hands and pointing straight down instead of at a 45-degree angle downward. As Martinez crept further into the garage, he appeared to notice the camera, and in one deft motion of his golf-gloved left hand, moved his gold-framed gradient lens sunglasses[1] from the top of his head down over his eyes while pulling his maroon sweatshirt hood up over his head. Martinez wore no glove on his right hand, but did sport red shoes, dark jeans slung low to expose a baggy bright blue pair of boxer briefs, and an oval belt buckle.

The State indicted Martinez for burglary of a habitation, TEX. PENAL CODE § 30.02(c)(2), with an enhancement paragraph alleging a prior felony conviction. The State later added a deadly weapon enhancement as a special issue. Martinez entered pleas of "not guilty" to the charge and "not true" to the enhancement

---

[1] A gradient lens is shaded darker on top than on bottom, and in this case, the bottom part of Martinez's sunglasses was nearly clear, or at most, a Hunter S. Thompson-esque amber.

paragraph. The jury found him guilty, found that he used or exhibited a deadly weapon during the offense, found that he had a prior felony conviction, and assessed punishment at twenty-five years' confinement.

SUFFICIENT EVIDENCE SUPPORTS THE HABITATION FINDING

Martinez first contends the evidence does not support his conviction. We review evidentiary sufficiency under the familiar *Jackson v. Virginia*[2] standard, viewing all evidence in the light most favorable to the verdict to determine whether the factfinder was rationally justified in finding guilt beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

To prove Martinez committed burglary of a habitation as charged, the State had to show Martinez entered a "habitation" without the effective consent of the owner and attempted, committed, or intended to commit theft. *See* TEX. PENAL CODE § 30.02(a). Martinez does not challenge the sufficiency of the evidence supporting the jury's finding that he burglarized the garage; he challenges only whether the garage qualifies as a "habitation" under the statute.

"Habitation" is defined by the penal code as "a structure or vehicle that is adapted for the overnight accommodation of persons," including "each separately secured or occupied portion of the structure or vehicle" and "each structure appurtenant to or connected with the structure or vehicle." TEX. PENAL CODE

---

[2] 443 U.S. 307 (1979).

§ 30.01(1). Although the penal code does not define the phrase "appurtenant to," we explained in *Jones v. State* that it means "belonging to; accessory or incident to; adjunct, appended or annexed to," noting that "[a] thing is 'appurtenant' to something else when it stands in relation of an incident to a principal and is necessarily connected with the use and enjoyment of the latter." 690 S.W.2d 318, 319 (Tex. App.—Dallas 1985, pet. ref'd) (quoting *Appurtenant*, Black's Law Dictionary 94 (rev. 5th ed. 1979)). Using that definition, we held that a detached residential garage was "a structure appurtenant to" a residence, thus falling within the statutory definition of a "habitation." *Id.*

Martinez appropriately acknowledges our holding in *Jones* but contends it should not control here, arguing it was wrongly decided. Instead, he suggests we should take guidance from later cases decided by our sister courts, which he contends establish additional criteria for determining whether a residential garage qualifies as a "habitation." *See, e.g.*, *Andrus v. State*, 495 S.W.3d 300, 305 (Tex. App.—Beaumont 2016, no pet.); *Shakesnider v. State*, 477 S.W.3d 920, 923 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Darby v. State*, 960 S.W.2d 370, 371–72 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). We disagree with Martinez's characterization of those cases, which do not conflict with our analysis in *Jones*. We are bound by our precedent holding that a detached residential garage is as a "habitation" under the burglary statute. *See Jones*, 690 S.W.2d at 319. And, the characteristics of this garage, that it is the only way to enter the house from the

driveway without having to walk around the whole block, reinforce that conclusion. The evidence is sufficient to support the jury's finding that Martinez burglarized a habitation.

SUFFICIENT EVIDENCE SUPPORTS THE DEADLY WEAPON FINDING

Martinez next contends the evidence does not support the jury's finding that he used or exhibited a deadly weapon during the burglary. *See* TEX. CODE CRIM. PROC. art. 42A.054(b). The term "use" in this context means "any employment of a deadly weapon, even simple possession, if such possession facilitates the associated felony." *Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004) (quoting *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)). The term "exhibit" requires that the weapon be "consciously shown, displayed, or presented to be viewed." *Id.* (quoting *Patterson*, 769 S.W.2d at 941).

"The purpose of the deadly weapon provision is to discourage and deter felons from taking and using deadly weapons with them as they commit their crimes." *Plummer v. State*, 410 S.W.3d 855, 864 (Tex. Crim. App. 2013) (citing *Coleman*, 145 S.W.3d at 655–56 (Cochran, J., concurring) (discussing history and rationale of the deadly-weapon provision)). This "deterrence rationale works only if the actor makes a conscious decision to 'use' or 'exhibit' the weapon to assist in committing the felony." Thus, to sustain a deadly weapon finding, there must be some evidence suggesting the weapon helped facilitate the associated felony. *Id.* at 865.

Here, the evidence included video footage showing Martinez entering the garage while holding a firearm with both hands. Martinez argues the firearm did not facilitate the burglary because he was able to accomplish the burglary without confronting anyone with the weapon. But the jury could rationally conclude the firearm emboldened Martinez to commit the burglary and assisted him by providing protection against the potential threat of homeowner resistance during the crime.

We are similarly unpersuaded by Martinez's argument, based on *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003), that the evidence could not establish he used or exhibited the firearm as a deadly weapon because he did not place anyone in "actual danger." He endangered Foster and Jernigan by breaking into their garage with a deadly weapon while they were home. But most notably, *Cates* and its progeny address the extent to which vehicles can be used as deadly weapons. *See id.*; *see also Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Vehicles are not deadly weapons per se. Firearms are. TEX. PENAL CODE § 1.07(a)(17)(A).

The analysis required to triangulate when a vehicle is used as a deadly weapon is whether, "in the manner of its use or intended use [the vehicle] is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). In that context, a deadly-weapon finding requires evidence that the defendant's driving placed others in actual, not just hypothetical, danger. *See Cates*, 102 S.W.3d at 738; *Drichas*, 175 S.W.3d at 798. But in cases dealing with firearms, the focus is on whether the firearm

–6–

facilitated the associated felony, regardless of whether the defendant encountered a third party while using the gun. *See, e.g.*, *Coleman*, 145 S.W.3d at 655; *Gale v. State*, 998 S.W.2d 221, 224 (Tex. Crim. App. 1999); *Patterson*, 769 S.W.2d at 942; *see also Plummer*, 410 S.W.3d at 859 (noting a deadly-weapon finding is permitted "when a jury could infer, in the absence of actual harm or threat, that the weapon 'facilitated' the associated felony."). The evidence supports the finding that the firearm Martinez exhibited while committing this crime was a deadly weapon.

### THE TRIAL COURT ACTED WITHIN ITS DISCRETION TO DENY MARTINEZ'S MOTIONS FOR CONTINUANCE AND MISTRIAL

Martinez next contends the trial court abused its discretion by denying his motion for continuance and his related motion for a mistrial. To obtain reversal based on a denied continuance, Martinez must show both that the denial was erroneous and that it caused actual and specific prejudice to his defense. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010); *Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006). This requires a showing that "the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial." *Gonzales*, 304 S.W.3d at 843 (quoting George E. Dix & Robert O. Dawson, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 28.56 (2d ed. 2001)). The record must also show "with considerable specificity how the

defendant was harmed by the absence of more preparation time than he actually had." *Id.* (quoting Dix et al., *supra*).

Martinez moved for a one-week continuance after the State disclosed additional evidence on the Friday before his Monday trial.[3] The evidence included twenty-two surveillance photos, a surveillance video, and a recorded police interview with Charly Garcia, a witness the State intended to call during the punishment stage. Garcia was the complainant in an aggravated assault case against Martinez and helped police identify Martinez as the suspect in several unrelated property crimes. Based on Garcia's identification in those cases, police were able to recognize Martinez as the suspect in the surveillance video taken from Foster's and Jernigan's garage.

Martinez was previously aware police identified him based on information provided by Garcia. In fact, the State had already provided Martinez with a copy of the police interview in which Garcia identified Martinez in surveillance videos taken from other property crimes. In any event, the newly disclosed interview, which Martinez could not access before the trial began,[4] lasted approximately eleven minutes and did not discuss the burglary.

---

[3] The State disclosed the evidence immediately after receiving it from a police detective who did not timely provide it upon request.

[4] Martinez was able to access the other newly disclosed evidence on the Friday before the trial, but the disc containing the Garcia interview would not play because of a technical issue.

The trial court granted Martinez a three-hour recess to review the new Garcia interview but denied his motion for a one-week continuance. The trial court also ordered the State to cooperate with Martinez during the recess to provide any information he needed. After the recess, Martinez renewed his motion for a continuance and moved for a mistrial, arguing the State had "ambushed him" with the additional evidence. The trial court denied those motions, noting both that it gave Martinez three hours to review the additional evidence and that it would allow "liberal cross-examination as to all those matters so the jury [would] know about all [his] allegations of misconduct by the state, including law enforcement."

On appeal, Martinez argues the three-hour recess was insufficient because he spent most of that time learning new details about the process by which police identified him as a suspect in the burglary. He complains he did not have an "opportunity to adjust trial strategy," "reconstruct cross-examination," or "question potential jurors about identification" during voir dire. But even with the immense hindsight in completing appellate briefing, Martinez does not explain how his trial strategy or questioning would have changed if he had been granted additional time. *See id.*

Moreover, Martinez told the trial court he wanted to avoid making identification an issue, because it would open the door for the State to discuss his other crimes. In fact, at Martinez's request, the trial court ordered the State to avoid eliciting detailed testimony about the identification process. Martinez does not

–9–

explain how the newly disclosed evidence, which he contends is relevant to the identification process, was material to his defense in light of his successful strategy to limit the introduction of such evidence.

Martinez's bare assertion that he lacked time to effectively review and utilize the new evidence does not establish actual and specific prejudice. *See Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995). Thus, the trial court did not abuse its discretion by denying Martinez's request for a one-week continuance. *Id.* And because Martinez fails to show actual prejudice resulting from the denied continuance, he likewise fails to show the trial court abused its discretion by denying his motion for a mistrial. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999) (mistrial appropriate "when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.").

### THE TRIAL COURT ACTED WITHIN ITS DISCRETION TO ALLOW TESTIMONY ABOUT WHETHER A DETACHED GARAGE CAN QUALIFY AS A HABITATION

Martinez next contends the trial court erred by allowing police testimony concerning whether a garage can qualify as a habitation. During its case-in-chief, the State asked Detective Darren Allen whether and why, based on his training, experience, and knowledge as a property crimes detective, a detached garage can be considered a habitation. Martinez objected that the question was one of fact for the jury and that "it is irrelevant what this -- this detective thinks that building is or is not." After the trial court overruled the objection, Allen testified: "In the field, . . . a

–10–

detached garage is considered a habitation. A habitation is a building designed for overnight, and anything on the property, including the, you know, garage that are [sic] secured are [sic] considered part of the habitation." Allen went on to explain that the garage at issue was on the main property and was appurtenant to Foster's and Jernigan's house.

We review a trial court's decision to admit evidence for abuse of discretion and will reverse only if the decision falls outside the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425(Tex. Crim. App. 2010). Martinez contends Allen offered improper opinion testimony, supplanting the jury's determination of whether the garage was a habitation. *See Ortiz v. State*, 834 S.W.2d 343, 348 (Tex. Crim. App. 1992). The State contends Martinez failed to preserve that issue, because his objections in the trial court were limited to relevance and whether the State's question called for an answer that would invade the province of the jury—an invalid objection under Texas law following the adoption of evidentiary rule 704. *Ortiz*, 834 S.W.2d at 348. Assuming without deciding that Martinez preserved the issue, we discern no abuse of discretion.[5]

Both lay and expert witnesses may offer opinion testimony. *See* TEX. R. EVID. 701, 702; *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). "[A]s a general rule, observations which do not require significant expertise to interpret and

---

[5] Accordingly, we do not address Martinez's alternative argument that, to the extent his counsel failed to preserve the issue, his counsel was constitutionally ineffective. *See* TEX. R. APP. P. 47.1.

which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met." *Osbourn*, 92 S.W.3d at 537. "This is true even when the witness has experience or training." *Id.* "It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert." *Id.* Allen's testimony did not require significant expertise to interpret and was not based on a scientific theory. Moreover, the jury could understand the evidence without needing specialized assistance. Thus, to the extent Allen offered opinion testimony, it was governed by the requirements of Rule 701. *See id.*

Under Rule 701, lay opinion testimony is admissible if it is both "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue." TEX. R. EVID. 701. Allen rationally based his testimony on personal knowledge gained through investigation of the burglary and experience as a property crimes detective. *See Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997) (perception requirement under Rule 701 can be satisfied by personal knowledge acquired through experience).

And the trial court could have concluded Allen's lay testimony would help the jury in determining whether Martinez burglarized a habitation. The mere fact that Allen's testimony embraced an ultimate issue for the jury does not make it objectionable. *See* TEX. R. EVID. 704; *Ex parte Nailor*, 149 S.W.3d 125, 135 (Tex.

Crim. App. 2004) (police may offer lay opinion testimony on an ultimate issue under Rule 701). Because the trial court could reasonably conclude Allen's testimony satisfied both requirements of Rule 701, it did not abuse its discretion by allowing it.

But even if the trial court had erred by allowing the testimony, any error would be harmless because it did not affect Martinez's substantial rights. *See* TEX. R. APP. P. 44.2. Substantial rights are not affected by erroneously admitted evidence where, after examining the record as a whole, we have fair assurance the error either did not influence the jury or influenced it only slightly. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

Even without Allen's testimony, the evidence against Martinez was overwhelming. As he concedes, there is no genuine dispute that he burglarized the garage. There is likewise no dispute that the garage was located on residential property, a mere twenty feet from the back door of Foster's and Jernigan's home. Photographs of the property introduced at trial showed the garage's position relative to the zero-lot-line house. And testimony provided that the garage was the primary access point to the house because it was the only way to enter the home from the driveway. This evidence clearly established the garage was a "habitation" under our precedent. *See Jones*, 690 S.W.2d at 319. After reviewing the record as a whole, we are convinced Allen's testimony did not affect Martinez's substantial rights because

it had no more than a slight influence on the jury. *Solomon*, 49 S.W.3d at 365 (interpreting TEX. R. APP. P. 44.2(b)).

THE JUDGMENT SHOULD ACCURATELY REFLECT MARTINEZ'S PLEA

Finally, we note that the judgment erroneously reflects a "true" plea to the enhancement paragraph. The record establishes Martinez entered a "not true" plea. We therefore modify the judgment to reflect a "not true" plea and affirm the judgment as modified. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).

/Cory L. Carlyle/
_____
CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
191549F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL MAURICIO
MARTINEZ, Appellant

No. 05-19-01549-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F19-75117-N.
Opinion delivered by Justice Carlyle.
Justices Myers and Osborne
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

The statement "PLEADED TRUE" in reference to the "1st
Enhancement Paragraph" is removed and replaced with the statement
"PLEADED NOT TRUE."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 26th day of April, 2021.