**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

————————————

**NO. 09-21-00380-CR**

————————————

**DEREK DEVONE COBBS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-06-08928-CR**

**MEMORANDUM OPINION**

Appellant Derek Devon Cobbs appeals his conviction for continuous sexual abuse of a child, namely J.P.[1] *See* Tex. Penal Code Ann. § 21.02(b). A jury found Cobbs guilty and assessed punishment at life in prison. Cobbs appeals his conviction, raising eight issues, complaining about the denial of his motion for continuance,

---

[1]We use initials to refer to the alleged victim, a minor child, and pseudonyms to refer to the child's family members. *See* Tex. Const. art. 1, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal judicial process").

denial of his challenge for cause, admission of Zoom testimony, ineffective assistance of counsel, and the sufficiency of the evidence. As discussed below, we affirm the trial court's judgment.

THE EVIDENCE

In October 2019, a grand jury indicted Cobbs for indecency with a child. *See id.* § 21.11(a)(1). The 2019 indictment alleges that Cobbs:

> on or about June 08, 2017, and before the presentment of this indictment, in the County and State aforesaid, did then and there, with intent to arouse and gratify the sexual desire of the defendant, engage in sexual contact with J.P., a child younger than 17 years of age, by having child touch the defendant's genitals[.]

In November 2021, a grand jury reindicted Cobbs for continuous sexual abuse of a child. *See id.* § 21.02. The indictment alleges that Cobbs:

> on or about June 08, 2019, and before the presentment of this indictment, in the County and State aforesaid, did then and there, during a period that was 30 or more days in duration, to-wit: from on or about June 8, 2017 through June 8, 2019, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against J.P., a child younger than 14 years of age, namely, Indecency with a Child by engaging in sexual contact with J.P. by having said child touch the Defendant's genitals with the intent to arouse and gratify the sexual desire of the Defendant[.]

Jose Alaniz, a former Investigator Specialist with Child Perspective Investigation, testified that in June 2019, he investigated an allegation of abuse involving Cobbs. Alaniz explained that Mother reported the abuse, and he interviewed the children and set up J.P.'s forensic interview.

2

Julie Pilgrim, a forensic interviewer at Children's Safe Harbor, testified that she conducted J.P.'s forensic interview. Pilgrim testified that J.P. reported that in different incidences, Cobbs, her stepfather, looked at her feet while exposing and rubbing his penis, and he put her feet on both sides of his penis and used her feet to rub his penis. Pilgrim testified that J.P. explained that he would stop when "white Stuff" came out of his penis. Pilgrim testified that J.P., who was twelve when the abuse occurred, reported that the incidents happened at least twice per week in different locations, including the stairs, and J.P. stated the first incident happened when she was in fourth grade and the last incident happened in her current house, either in Cobbs's bedroom or the laundry room. Pilgrim explained that J.P. reported that Cobbs sent her text messages containing a money sign and a question mark and paid to see her feet.

Mother testified that in 2011, when J.P. was four, she moved in with Cobbs, and in 2017, right before J.P. finished fourth grade, they moved to a new house. Mother testified that Cobbs had a "porn addiction[,]" and a sexual attraction to feet, and he attended sexual anonymous meetings. Mother explained that Cobbs masturbated while rubbing her feet and used her feet to masturbate. Mother testified that in 2019, J.P. told her that Cobbs had been inappropriate with her and had played with her feet while he played with his private parts and that the first incident occurred in their old house. Mother testified that Cobbs told her he had done something terrible and ruined the family and threatened to commit suicide. Mother testified that

3

she made a report and gave J.P.'s phone to the police, and she identified J.P and Cobbs in photographs and provided the police a copy of text communications between J.P. and Cobbs.

J.P. testified that when she was ten years old in fourth grade and before they moved to their current house, Cobbs began to act "inappropriate" towards her by showing his penis, and the abuse stopped at the end of her sixth-grade year when she was twelve. J.P. explained that the incidents occurred about twice a week, and Cobbs would expose and touch his penis and ask to see her feet. J.P. testified that Cobbs would stop when he ejaculated and "[w]hite stuff[]" would go on her feet or the floor. J.P. further testified that Cobbs rubbed his penis on her lower back and "many times[]" he put her feet on his penis and "rub them back and forth." J.P. explained that the incidents occurred over a long period of time and for a period longer than thirty days. J.P. also explained that Cobbs sent her text messages with a money sign and question mark when he wanted her to go into his room and show him her feet, and he gave her twenty dollars or less and told her to delete the messages. J.P. testified that she did not tell Mother because she was afraid her siblings would move, but she told Mother because she became afraid of Cobbs. J.P. took screen shots of the text messages Cobbs sent her, which were published to the jury.

Detective Joe McGrew of the Conroe Police Department testified that he investigated Cobbs's case and attended J.P.'s forensic interview. Detective McGrew interviewed Mother, who provided clothing and granted permission to search her

4

home for possible DNA evidence on the carpets. Detective McGrew explained that Cobbs exhibited suspicious behavior and prevented him from entering the home, and when he frisked Cobbs for safety, he observed Cobbs had two cell phones, and Mother claimed that one of the cell phones was hers. Detective McGrew testified that Cobbs also claimed ownership, and when he asked Cobbs for the phone to determine the owner, Cobbs gave him the phone and Mother opened the phone and showed him a picture of a young person's feet. Detective McGrew further testified that he determined the phone belonged to Cobbs, and he seized Cobbs's phone and gave it to the crime scene investigator, because based on information he obtained from J.P.'s forensic interview, he had reason to believe it contained evidence of a crime. Detective McGrew explained that he obtained a search warrant for Cobbs's cell phone, and the crime scene investigator downloaded photographs from the cell phone. Detective McGrew also explained that after Mother identified the people and criminal elements in the photographs, Cobbs was arrested.

Detective McGrew testified that based on his reasonable belief that there may be biological evidence in the home, the crime lab took samples from the home, and one sample of carpet from the stairs was AP positive, meaning there were enzymes consistent with semen fluid. Detective McGrew explained that due to an oversight on his part, the samples were not DNA tested. Detective McGrew also obtained evidence from J.P.'s damaged cell phone, which contained a text conversation

between J.P and Cobbs, and Mother provided screen shots of that same text conversation from J.P.'s new cell phone.

Officer Stoney Cook, the crime scene investigator with the Conroe Police Department, testified that he extracted data from Cobbs's cell phone and gave the data to other investigators to evaluate the extraction and run reports. The summary extraction report was admitted into evidence.

Investigator Jerry Thomas of the Montgomery County District Attorney's Office testified that he is assigned to Human Trafficking and Internet Crimes Against Children and works in the Forensics Lab. Investigator Thomas testified that he assisted in the examination of Investigator Cook's extraction which included images of J.P. that were identified as concerning. Investigator Thomas explained that one image depicted a male holding a penis in his hand above two feet, and the person was wearing joggers that were identified as J.P.'s. Investigator Thomas explained that another image depicted the same feet and penis, but the penis appeared to be touching or resting on the feet. Investigator Thomas testified that the extraction also included a text message between Cobbs and J.P.

A.C. testified that Cobbs was married to her sister, and in July 2003, she was sixteen years old when she visited Cobbs and her older sister in Austin. A.C. testified that during her visit she was injured in a car accident, and while she was laying on the couch in the living room, Cobbs positioned her feet together, put his penis between her feet, and "started entering [her] feet in an out." A.C. explained that she

was scared and pretended to be sleeping, and Cobbs stopped after he heard a noise from the bedroom. A.C. also explained that she did not tell her sister about the incident until a couple of years later, and after her sister told her about the allegations against Cobbs, she spoke with the detective and agreed to testify.

Cobbs's sister testified she and Cobbs have a close relationship, and she described Cobbs as having the perfect family. Cobbs's sister explained that Mother had told her about Cobbs's pornography addiction, but she was not aware that he had any obsession with feet. Cobbs's sister characterized J.P.'s relationship with Cobbs as being "[a] bit disrespectful[,]" and she wondered why J.P. was acting that way. Cobbs's sister testified that Cobbs sent her a text message telling her that, "'I have lost everything important to me due to sexual immorality[.]'" Cobbs's sister also testified that Cobbs was worried about going to jail.

Cobbs denied having a foot fetish, taking pictures of his penis with J.P.'s feet, and using J.P.'s feet to masturbate his penis. Cobbs testified that J.P. lied to the jury because he disciplined her. Cobbs also denied putting his penis between A.C.'s feet and claims she lied.

## ANALYSIS

Again, in eight issues, Cobbs complains about the denial of his motion for continuance, denial of his challenge for cause, admission of Zoom testimony, ineffective assistance of counsel, and the sufficiency of the evidence.

7

## Sufficiency of the Evidence

We address Cobbs's eighth issue first because it challenges the sufficiency of the evidence supporting the jury's verdict and, if sustained, it would result in rendition of a judgment of acquittal. *See Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also* Tex. R. App. P. 47.1. A person commits the offense of continuous sexual abuse of a child if:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

Act of May 26, 2017, 85th Leg., R.S., ch. 1038, § 2, 2017 Tex. Sess. Laws 4079, 4079 (current version at Tex. Penal Code Ann. § 21.02(b)). Section 21.02 of the Penal Code defines "act of sexual abuse" as including, among other things, an act that constitutes the offense of "indecency with a child under section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child[.]" Tex. Penal Code Ann. § 21.02(c)(2). A person commits the offense of indecency with a child if the person engages in sexual contact with a child younger than 17 years of age or causes the child to engage in sexual contact. *Id.* § 21.11(a)(1). "Sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of

8

any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id.* § 21.11(c). The State need not prove the exact dates of the abuse, only that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Brown v. State*, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.); *Lane v. State*, 357 S.W.3d 770, 773–74 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see also* Tex. Penal Code Ann. § 21.02(d) ("[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.").

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the factfinder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *See Brooks v. State*, 323 S.W.3d 893, 899 n.13 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772,

778 (Tex. Crim. App. 2007). The jury as factfinder is the sole judge of the weight of the evidence and credibility of the witnesses, and it may believe all, some, or none of the testimony presented by the parties. *See Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018); *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995). The appellate court does not reweigh or determine the credibility of the record evidence, nor does it substitute its own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

"Direct and circumstantial evidence are treated equally: 'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 13). Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (citations omitted); *Hooper*, 214 S.W.3d at 13; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The testimony of a child victim, standing alone and without corroboration, is sufficient to support a conviction for indecency with a child. Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (providing that child's testimony alone is sufficient to support a conviction for a sexual offense when the child is under the age of seventeen at the time of the alleged offense); *Chasco v. State*, 568 S.W.3d 254, 258 (Tex. App.—Amarillo 2019, pet. ref'd).

The 2021 indictment alleges that between June 8, 2017, and June 8, 2019, Cobbs committed two or more acts of sexual abuse against J.P. by having J.P. touch his genitals with the intent to arouse and gratify his sexual desire. J.P. added that "many times[]" Cobbs put her feet on his penis and would "rub them back and forth." J.P. explained that the incidents occurred over a long period of time and for a period longer than thirty days. J.P.'s testimony alone was sufficient to support the verdict. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Chasco*, 568 S.W.3d at 258. J.P.'s testimony was corroborated by pictures and messages on Cobbs's phone and Mother's testimony that Cobbs had a sexual attraction to feet and used her feet to masturbate.

The jury, in its role as factfinder, could have found J.P.'s testimony credible. The jury could have believed J.P.'s testimony that the abuse started when she was in fourth grade, ended when she was in sixth grade, and occurred about twice a week. The jury also could have believed that the alleged offenses occurred prior to the date of the indictment and continued over a two-year period. Based on the evidence at trial, the jury could have concluded that Cobbs, "during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *See* Tex. Penal Code Ann. § 21.02(d); *Lane*, 357 S.W.3d at 774. Viewing the evidence in the light most favorable to the verdict and deferring to the jury's authority to determine the credibility of the witnesses and the weight to give their testimony, we conclude that a reasonable factfinder could have found the essential elements of the offense

11

beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Febus*, 542 S.W.3d at 572; *Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778; *Hoope*r, 214 S.W.3d at 13; *Chasco*, 568 S.W.3d at 258; *Lane*, 357 S.W.3d at 774. We overrule issue eight.

## Motion for Continuance

In issue one, Cobbs complains the trial court erred by denying his motion for continuance because he was not served with a copy of the 2021 Reindictment at least ten days before trial as required by the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. arts. 27.12 (allowing defendant ten days to file written pleadings in cases where the defendant is entitled to be served with a copy of the indictment), 28.10 (allowing the defendant not less than ten days to respond to an amended indictment). Cobbs argues that the impaneling of the jury had to be outside the ten days, because otherwise the State could reindict a case the day before a jury was impaneled as long as the jury was not sworn for an additional ten days, thereby denying the defendant an adequate time to prepare a trial strategy before beginning jury selection. The State argues Cobbs waived his complaint because his motion did not specifically urge article 27.12, and regardless he had adequate time to prepare a defense.

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). To establish an abuse of discretion, a defendant must show that he was actually prejudiced by the

12

denial of his motion due to his counsel's inadequate preparation time. *Id.*; *Heiselbetz*, 906 S.W.2d at 511. A bare assertion that counsel did not have adequate time to prepare a defense does not alone establish prejudice. *Gallo*, 239 S.W.3d at 764.

Cobbs filed an Objection to the Reindictment, arguing that the new charge should have been considered a new indictment and received its own cause number because it concerns a different offense and range of punishment. *See* Tex. Code Crim. Proc Ann. art. 28.10. The trial court conducted a hearing on Cobbs's Objection to the Reindictment, during which Cobbs reurged his objection under article 28.10 and argued that the amended indictment for continuous sexual abuse of a child violated his rights by depriving him of enough time to prepare his defense. *See id.* The trial court explained that article 28.10 addressed an amended indictment, but this case concerned a reindictment, which is a new indictment under the same existing cause number. The trial court denied Cobbs's Objection to the Reindictment based on article 28.10 and determined that Cobbs had more than ten days to prepare for the 2021 Reindictment.

While Cobbs complains that he is entitled to a new trial because the trial court's ruling deprived him of adequate time to prepare a defense, Cobbs failed to establish that he was prejudiced by the trial court's denial of his request for a continuance. The trial court noted that counsel had been on the case more than 400 days and had access to the discovery involving the same sexual acts, dates, and same victim alleged in the November 2021 Reindictment. The record shows the November

13

2021 Reindictment alleged the same elements as the June 2019 Information charging Cobbs with continuous sexual abuse of a child and alleging that Cobbs committed two or more acts against J.P., namely indecency with a child, by engaging in sexual contact and having J.P. touch his genitals. The record also contains a June 2019 Affidavit for Warrant of Arrest in which Detective McGrew averred that Mother reported that Cobbs masturbated in J.P.'s presence while looking at her bare feet. Detective McGrew testified that J.P. reported that Cobbs would hold her bare feet against his penis and use her feet to masturbate. J.P. reported that the activity started when she was ten and ended when she was twelve and occurred in her bedroom and on the stairs of the residence. Detective McGrew stated that several samples from stains in J.P.'s room and the stairs tested positive for seminal fluid. Detective McGrew also averred that Cobbs voluntarily gave him a phone, which Mother identified as Cobbs, and Mother displayed a photograph from the phone that she identified as J.P.'s feet and Cobbs's penis. Detective McGrew stated there was probable cause to believe Cobbs committed the felony offense of continuous sexual abuse of a child and requested a warrant authorizing Cobbs's arrest.

Additionally, in September 2021, the State provided notice of extraneous acts it intended to use during trial. The notice stated that on many occasions between 2013 and 2019, Cobbs committed the offense of indecency with a child against J.P. by making J.P.'s feet contact and/or masturbate Cobbs's sexual organ. The notice indicated that Cobbs's cell phone contained two photographs of his sexual organ and

J.P.'s feet and messages asking J.P. if she wanted to make twenty dollars and to delete the messages. Therefore, the record shows that defense counsel had prior notice of the allegations contained in the 2021 Reindictment as early as June 2019.

We conclude that Cobbs failed to show that he was actually prejudiced by his counsel's alleged inadequate time to prepare his defense. *See Gallo*, 239 S.W.3d at 764; *Heiselbetz*, 906 S.W.2d at 511. Accordingly, we conclude the trial court did not abuse its discretion by denying Cobbs's Objection to the Reindictment and his request for a continuance to have additional time to prepare a defense. We overrule issue one.

## Challenge for Cause

In issue two, Cobbs complains the trial court erred by denying his challenge for cause to venireperson 27, who allegedly made statements indicating a bias or prejudice that led to the dismissal of eleven other panel members. The State argues Cobbs failed to establish the trial court's denial of his challenge for cause was harmful because he did not use a peremptory strike on the complained-of juror or request an additional strike.

The record shows the State inquired as to whether the prospective jurors could follow the one-witness rule and convict based on the testimony of one witness if they believed the child witness beyond a reasonable doubt regarding the elements of the offense, and twelve prospective jurors, including venireperson 27, raised their cards. The record also shows that when defense counsel asked if anyone felt like they could

not give her client the benefit of the presumption of innocence, eleven prospective jurors raised their card, including venireperson 27. At the end of jury selection when defense counsel asked the prospective jurors if there was anything they needed to share, venireperson 27 made the following statement:

> I feel from my experience, the children will not tell a lie normally. Lots of time, they won't. They will be honest. So, if we start accusing kids telling a lie, there must be a reason for you to accuse them. So, at times if you start accusing kids telling a lie, there is a reason they are telling this lie. So, I just view the question you had over there and present over there just seems try to guide me into something. I don't feel comfortable with it.

During the bench conference, defense counsel moved to strike thirteen prospective jurors for cause based on the one-witness rule, and the State had no objection. The trial court granted defense counsel's challenges for cause except for venireperson 27 without stating a reason. Later, when defense counsel renewed her objection to venireperson 27 regarding the presumption of innocence and not being able to say the defendant was not guilty at the time of having heard no evidence, the State opposed the challenge and argued that the nature and context of the "scaled question" gave an improper definition of the law. The trial court denied defense counsel's renewed objection to venireperson 27. After the trial court seated the jury, which included venireperson 27, the trial court asked the parties if they had any objections after looking at their work product and the seated jury, defense counsel stated "[n]ot in that regard," but that she had a *Batson* challenge.

16

The record shows that Cobbs used all ten of his peremptory strikes on various prospective jurors, and he did not use a peremptory strike on venireperson 27, ask the trial court to grant him additional strikes, or identify venireperson 27 as an objectionable juror who sat on the jury. *See* Tex. Code Crim. Proc. Ann. art. 35.15(b). To preserve error for a trial court's erroneous denial of a challenge for cause, Cobbs must show that he asserted a clear and specific challenge for cause, that he used a peremptory challenge on the complained-of venireperson, that his peremptory challenges were exhausted, that his additional strike was denied, and that an objectionable juror sat on the jury. *See Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010); *Burg v. State*, No. 09-16-00200-CR, 2018 WL 1747393, at *2 (Tex. App.—Beaumont 2018, pet. granted) (mem. op.), *aff'd,* 592 S.W.3d 444, 449 (Tex. Crim. App. 2020). Cobbs failed to preserve his complaint for our review. *See Davis*, 329 S.W.3d at 807; *Burg*, 2018 WL 1747393, at *2; *Andrus v. State*, 495 S.W.3d 300, 307 (Tex. App.—Beaumont 2016, no pet.). We overrule issue two.

Zoom Testimony

In issue three, Cobbs complains the trial court erred by allowing a witness to appear by Zoom in violation of the Confrontation Clause of the United States and Texas Constitutions. *See* U.S. Const. amend. VI. Cobbs argues the trial court failed to make a specific necessity finding as required by *Haggard v. State*, 612 S.W.3d 318 (Tex. Crim. App. 2020). The State argues that unlike *Haggard*, Cobbs failed to object to the remote testimony and thus waived this complaint for our review.

"[T]he right of confrontation is a forfeitable right–not a waivable-only right–and must be preserved by a timely and specific objection at trial." *Deener v. State*, 214 S.W.3d 522, 527 (Tex. App.—Dallas 2006, pet. ref'd) (citation omitted); *see Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010). An appellant fails to preserve error when he does not object to the remote testimony of a State's witness. *See Broussard v. State*, No. 09-20-00259-CR, 2022 WL 2056388, at *7 (Tex. App.—Beaumont June 8, 2022, no pet.) (mem. op., not designated for publication) (citing *Jones v. State*, Nos. 05-21-00019-CR & 05-21-00021-CR, 2022 WL 854915, at *5 (Tex. App.—Dallas Mar. 23, 2022, no pet.) (mem. op., not designated for publication) (concluding that appellant failed to preserve error because he did not object to the remote testimony)).

The record shows that before Investigator Cook testified, the trial court stated that the State and Cobbs agreed that Investigator Cook could testify via Zoom due to medical related necessity. The record further shows that Cobbs did not object to Investigator Cook testifying remotely. We conclude that since Cobbs failed to object to Investigator Cook's remote testimony, he failed to preserve error. *See* Tex. R. App. P. 33.1; *Davis*, 313 S.W.3d at 347; *Broussard*, 2022 WL 2056388, at *7; *Jones*, 2022 WL 854915, at *5; *Deener*, 214 S.W.3d at 527. We overrule issue three.

## Ineffective Assistance

In issues four, five, and six, Cobbs complains his counsel was ineffective by failing to: (1) object to evidence obtained from the alleged unlawful seizure of his

18

cellphone; (2) object to the search warrant which was obtained after the alleged illegal search and seizure of this cellphone; and (3) to know the predicate for character testimony. Cobbs argues that the cumulative effect of his trial counsel's deficient performance resulted in an unfair trial.

To establish that he received ineffective assistance of counsel, Cobbs must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). The party alleging ineffective assistance has the burden to develop facts and details necessary to support the claim. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). A party asserting an ineffective-assistance claim must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citations omitted). An appellant's failure to make either of the required showings defeats the claim on ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

The right to effective assistance of counsel ensures the right to reasonably effective assistance and does not require that counsel must be perfect. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). Isolated failures to object ordinarily do not constitute ineffective assistance of counsel. *See id*. Ordinarily, on direct appeal, the record will not have been sufficiently developed to demonstrate in

19

the appeal that trial counsel provided ineffective assistance under the *Strickland* standards. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012). Before we denounce trial counsel's actions as ineffective, counsel should normally be given an opportunity to explain the challenged actions. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citation omitted). When counsel has not been given an opportunity to explain the challenged actions, we will find deficient performance only when the conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

The record does not indicate that Cobbs filed a motion for new trial to allege ineffective assistance. The record is silent as to trial counsel's tactical and strategic decision making. Moreover, Cobbs did not demonstrate that, but for counsel's alleged errors, the outcome of the trial would have been different. *See Graves v. State*, 310 S.W.3d 924, 929 (Tex. App.—Beaumont 2010, pet. ref'd). In addition, trial counsel's ineffectiveness is not apparent from the record. *See Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003). Cobbs cannot defeat the strong presumption that counsel's decisions during trial fell within the wide range of reasonable professional assistance. *See Thompson*, 9 S.W.3d at 814. Since nothing in the record supports the conclusion that trial counsel's complained-of conduct was so outrageous that no competent attorney would have engaged in it, we overrule

Cobbs's fourth, fifth, and sixth issues. *See Goodspeed*, 187 S.W.3d at 392. Having overruled each of Cobbs's issues, we affirm the trial court's judgment.

AFFIRMED.

                                            _____

                                            W. SCOTT GOLEMON
                                              Chief Justice

Submitted on March 15, 2023
Opinion Delivered April 19, 2023
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.